This case is number 24-1697, Kurt Stokinger v. Armslist, LLC. At this time, would Counselor of the Appellants please introduce himself on the record to begin. I am Douglas Sletter from Brady United. Against gun violence, you've heard this before. Yes, and you don't need to do all of it. Don't need to do all of it. So go right into the legal argument. If I could, while you were out, I think your clerks can confirm I gave a brilliant and compelling oral argument that you can listen to. So, we can put a human on the moon, but anyway. What we have here is a situation where I want to make two points during the oral argument. One is the District Court erred in dismissing this case for lack of personal jurisdiction and thereby depriving Officer Stokinger of the ability to recover on the merits against Armslist. And two, the judge unfortunately made a couple of clear errors with regard to jurisdictional discovery. He totally misinterpreted and seems to have misunderstood the applicable rules of civil procedure. And so I just want to make both of those points today. Armslist developed a business plan, a business model they use all around the United States to provide a mechanism for people to sell guns and to do so without any background checks and in a way that aids and abets illegal conduct. And that is exactly what happened here. What would you say is the best allegation in the complaint to show that they consciously took action to facilitate a sale in New Hampshire itself, that they did something to do that? Your Honor, they concede. I'm sure opposing counsel, my friend here is going to concede that yes, they set this up. And, in fact, if there was a site that simply allowed people to purchase arms from a site and that sale then happened to occur in New Hampshire, one could say they facilitated a sale in New Hampshire. I take it, though you may be of the view that would be enough in and of itself to permit personal jurisdiction, you're saying this case is easier than that case. What are the features of this case that make it easier than that case to demonstrate personal jurisdiction? Thank you, Your Honor. One of the easiest is that we learned, and it's explained in the briefing, that Arms List gets now 16,277 listings from New Hampshire alone to sell guns in New Hampshire. Arms List deliberately sets up their system so that people will buy locally. And so if Arms List has a feature that says location, and now it's even, that just went off again, I'm sorry. Oh, no. Okay. And now it even has a feature where you list the actual town or city in New Hampshire. Before now, back in the day, when they had a feature, as I understand it, the seller was required to identify the place they were selling from? Yes. Is that correct? Yes. And the way they would do that is through a drop-down menu that would enable them to pick the state from which the sale was occurring, correct? Yes. And is it the case that Arms List then did something through its code or whatever that would enable a purchaser to find a New Hampshire sale on the site? Yes, Your Honor. So once the seller created it and said New Hampshire, the instructions that Arms List gave to people going on their site is look for local sales. You want to do local sales because you want foot traffic. And then how did the site operate such that the user would be able to find a New Hampshire sale in particular? It provided a mechanism for that. I am not a technological expert at all, but in the complaint we assert, and again I'm fairly sure that my friend will agree completely, they set it up so that when you come on from New Hampshire, it will tell you what guns are for sale. It will give you the listings, the 16,277 listings a year in New Hampshire, and it will tell the seller you want a customer in New Hampshire. You're saying there's a sorting feature, basically, where you can select for guns for sale in a particular state on the website. Correct. However, let's look at the background here. The background is, remember, this is pursuant to a federal and state regulatory system that says, by the way, that it is a crime to buy or sell a gun if you're not both from New Hampshire. If the seller has a reason to believe that you're not from New Hampshire, it's a crime to go forward. Right. It's not just that the website is set up that way. It has to be set up that way to comply with the law. Your Honor, I'd like your question. I'm going to not go quite that far. There are some exceptions when you could sell to somebody who is out of state, but you are putting yourself at significant risk of being prosecuted under federal law. And indeed— As arms list you are? Arms list is aiding and abetting all of this. So arms list is yes. Arms list is aiding and abetting. It would be at risk.  Yeah, okay. And here, in this specific sale, Mr. McNamara put out the listing, and the person he sold to was Sarah Johnson from New Hampshire. Do we know whether she used the filtering function to find the McNamara sale? We don't, and that's one of the things we would like to have some jurisdictional discovery on. There was no allegation in the complaint that she used that feature to find this sale. To find that there was a New Hampshire— Just help me on this. Suppose I thought that the feature of the website that made it possible to search for a New Hampshire sale, combined with the requirement to identify where you're selling from that the website imposes, plus its instruction that sales then occur in that place. Suppose I thought all of that combined to show purposeful availment of New Hampshire. For the relatedness point, is it relevant if all of those features are necessary to show purposeful availment, that the complaint alleged this particular sale that gives rise to the claim took advantage of all of those features in order for the sale to occur? Is it required? For relatedness. For relatedness. Do you see the point? Yes, I do, Your Honor. Relatedness, and I hope this answers, but I'm sure you'll pursue if it doesn't. There should be no question here about relatedness because it is well known that if you pursue private sales with no background checks— There's a reason why there's no background checks, right? A very large number of those types of sales are for criminal activity, and it is well known, and we assert that arms list— It's not quite responsive because what I'm worried about is in the Internet context, what is the relationship between the relatedness prong and the purposeful availment? And one could imagine features of a website that brings it from the circumstance of it's merely just a website, so it's open to anybody, that doesn't show purposeful availment, to features that cross the line and make it so that the website is now purposely availing itself in doing its business, the company that runs the website, of that foreign jurisdiction. But if the claim that gives rise to the liability for which we're trying to get personal jurisdiction wasn't taking advantage of all those features, then is the claim really related to the foreign jurisdiction? In other words, I have all these features, that's why I'm targeting. But in fact, this person used the website just like a website that's just a picture, which wouldn't be purposeful availment. Do we then say the claim is related for personal jurisdiction purposes or not? Right. And again, I hope— We do allege here, and this is the—I think goes to the relatedness. Sarah Johnson purchased a number of guns through ARMS. I think the ATF estimated 30 to maybe 60-something to 100-something. So she clearly was interested in buying guns in New Hampshire, and then she committed a second crime by giving them to her husband, who was a felon, and then the husband would sell them in commerce. And everybody knows that Boston is very near New Hampshire, and a whole lot of crime guns from New Hampshire end up in Boston or the Boston area. Is it aware of the complaint that she found out about the McNamara offer through the ARMS list website? She did. Yes. Yes. And so the only thing that's missing, as far as anything's missing, and so far as this is even enough, if it was there, is the allegation that in using that website to find out about this sale, she used the filtering function that was location-based. Yes. I mean, that's our allegation. Our allegation is she went on the website in order to find New Hampshire guns for sale. Is that actually in the complaint, though, is what we're asking? Is there an actual allegation in the complaint saying that? Because you did allege she bought the gun in New Hampshire. I remember that. She definitely did. Yes, that's in the complaint. And bought many guns in New Hampshire through the ARMS list website. And I apologize. I'm going to have to try to – I'm sorry, Your Honors. I should have had this on the tip of my tongue. You can go on. Thank you very much. So here, again, I'll say it one more time and then I'll stop. 16,277. This is not a one-off. This is what Sarah Johnson was doing. This is what she was doing with her husband, Sullivan, the felon. And ARMS list created this public nuisance. And ARMS list was not deliberately not doing anything along the lines of, you know, know your customer. They were saying, in fact, we don't want to know our customer. Leave us out of this. But in doing that, as we allege in the complaint, this is negligent and it's a public nuisance leading to aiding and abetting illegal activity that foreseeably results in Officer Stokinger almost losing his life and being saved by other Boston police officers. Thank you. To just jump quickly to the – You've passed your time now. Thank you. We'll get you on rebuttal.  Thank you, Counsel. At this time, would Counsel for the ARMS list please introduce themselves on the record to begin? Yes. Good morning, Your Honors, and may it please the Court. Andrew Hamilton for the Appellee ARMS list LLC. And with me at the Counsel desk is my colleague Mark Rivellis and Stephanie Naum. All the plaintiffs allege ARMS list did to purposely avail itself of New Hampshire is to facilitate a lawful gun sale that occurred off of ARMS list's website without ARMS list being involved in the sale and without receiving any money from the sale and without even having knowledge that the sale occurred. Under these circumstances, the District Court was correct in finding that New Hampshire did not have jurisdiction over ARMS list and denying plaintiffs' motion for jurisdictional discovery for the following three reasons. Number one, there are no plus factors here that would make it foreseeable that ARMS list would be hailed into court in New Hampshire. Number two, ARMS list could not foresee being hailed into New Hampshire for a tort that allegedly occurred in 2016 based on contacts that they allege arise years later as much as in some circumstances seven years later. And third, ARMS list did not, excuse me, the District Court did not abuse its discretion in denying plaintiffs further jurisdictional discovery when they could not identify jurisdictional facts that would allow New Hampshire to assert jurisdiction over ARMS list. Now, to the first point about the plus factors. Counsel, can, sorry to break in right away, but you said, you started it off by saying this is a sale that your client wasn't involved in and didn't even necessarily know that it happened, and I understand your points about that. But whether you call it a plus factor or it's similar to the Keaton case, your client does have a business model that specifically relies on local sales, people meeting in person and doing a hand-to-hand sale of a gun or, you know, accessories related to guns. That is the entire business model of your client, is it not? So isn't the way that it makes money relying on people engaging in sales in the states? So the question that's involved in this case with the specific jurisdiction is what actions ARMS list is taking within New Hampshire. And so it has a website that's available to anyone anywhere. And the fact that there are third-party individuals who come onto the website and decide to look for weapons and other items and find those and complete those offline in wherever they're found locally, that does not – those actions cannot be – are not actions that ARMS list is taking within the state. Counsel, I guess I don't understand that, and maybe you can help me, because, you know, the normal website, you know, I order something and it's available in all 50 states, and we've said that's clearly not enough, right? The fact that anybody in the U.S. can go on a website and it's accessible and they can get something delivered to them wherever they are, that's not enough. But again, the business model here, as I understand it, and please correct me if I'm wrong because I'm not, you know, familiar with all these regulations, is it has to rely on the local sales because that's what makes – if you're a private seller, that's what usually means that you're staying within the bounds of the law. You're selling to somebody else in the same location. So that just seems to be very different from a standard website, which doesn't care, you know, where I order from and where the goods are delivered. This is a model that actually requires people to sell to each other in the locations where they're located, and if it didn't, private sales would be largely impossible. Am I getting that wrong? Well, two points about that. The business model of the website is in 2015, 2016, the majority of the revenue that Arms List received was not from private sales, and Mr. Gibbons' affidavit makes this clear that they don't receive any revenue from private sales. I understand that, but if you could just focus on the private sales because that is part of the business model. They want the private sales to happen, right? I mean, that's absolutely part of what they're doing. And doesn't the private sale part of the business model require the sales to happen for the most part, except for perhaps some exceptions, in the location where the person is? So the private sales, under the federal law, it's our understanding that that has to, you can't do it across state lines, so it has to happen locally. But this is the same as any other website where, you know, it's targeting individuals everywhere. And so the fact that individuals have to be in the same state, it doesn't differentiate New Hampshire from any of the other states. You know, there could have to be local interactions in Wyoming and Montana and Alaska and New Hampshire. Suppose I called you up. You're in Massachusetts, and I say, I'd like to buy a gun in New Hampshire, and I'm going to consummate the sale, the purchase in New Hampshire. Do you know anyone in New Hampshire from whom I could buy the gun? And you say, McNamara lives in New Hampshire. Why don't you go talk to McNamara? He'll sell you the gun. And I go to McNamara in New Hampshire, and I sell the gun. Could you be sued in New Hampshire? So I think in that case, it would depend on whether I directed any action in New Hampshire. Let me just give you the facts. I called you. I said, do you know anyone in New Hampshire I could buy a gun from? You say, I've talked to McNamara. He wants to sell the gun. He'll sell it to you in New Hampshire. Go to New Hampshire. You can buy the gun from McNamara. Could I sue you in New Hampshire? I think that may be possible. If so, and you're not saying no, so if so, why can't we say that's what Arms List is doing here when it provides the filtering function that enables a person to find out where a gun is being sold by McNamara and tells him it's being sold in New Hampshire? Because in the hypothetical that you provided, I'm directing your honor in this case to New Hampshire. When I go on the site and I ask Arms List site, where is a sale in New Hampshire? And it says right there, McNamara. Why is that any different? I called you and said, where can I make a sale in New Hampshire? You said, oh, I know somebody, McNamara. Aren't they identical? No, your honor, and this comes down to the structure of the website. It's like an online bulletin board or an online classified section. It provides the opportunity for third parties to come onto the website and list items that they are looking to sell, and they can sort those functions based on the information that's input by third parties. That's Arms List's choice to make it so you can find out where the sale is being offered from. I'm sorry, your honor. That's Arms List's choice to enable the user to find out where the sale is occurring. Arms List doesn't have to include that function. You chose to include a function that, on the one hand, requires sellers to say where they are, and on the other hand, enables users to find where they are. You didn't have to do both things, but you did both things, and then on top of that, as Judge Rickman points out, you say, and we want to make sure that when you do that sale, it occurs where we told you it is being offered to happen. When all those things are true, why aren't you on notice that you could be sued in New Hampshire? Because, your honor, in the court, and Judge Barbadaro made this point clear, is that when you have these functions that are available equally to anyone anywhere, there's this link of directing your activity into New Hampshire. Am I hypothetical? Anybody could have called you, and let's say you know people in all 50 states. I could have asked, do you know anybody in Alabama? Do you know anybody in Virginia? In fact, I'd like to know, is there anybody in each of the states? Give me the names of each person and what state they're in so I can make the deal. That can't absolve you of personal jurisdiction in each of those places just because you're doing it everywhere. Yes, your honor. I'd say under those circumstances, you are, again, you have knowledge. Hold on one second. Judge Sell, yes, you can hear us. Under those circumstances, I've received the call from your honor or other people, and I'm directing them to different states. In this case, Armsys doesn't have any knowledge of where these sales are occurring. Well, how is it able to tell them, how is it able to enable the user to find out the sales occurring in New Hampshire? Who's doing that? So the user is putting in their location. And why, when they put that in, does it come out? McNamara is in New Hampshire. Presumably that's Armsys doing that work, isn't it? So it's Armsys' website. That's Armsys. Right. They've programmed it because they're referring to, in Judge Barron's example, he's just saying take his example to the tenth degree exponentially. His brain couldn't keep 200,000 different people around the country in mind, so Armsys has created a website and programmed some code to do exactly what Judge Barron did in his example but on a much bigger scale. And as I was asking you before, that's its business model. That's what it wants to do. So I just don't quite understand the argument that it can't foresee, it doesn't intend. This is exactly what it intends, is for people to be able to find each other in the various states and engage in hand-to-hand sales there to make sure that they're not violating the law as a private seller. And I would say that that's not categorically different than most websites where you have users who are coming on to a website. But all the website cases, we don't have any website case like this. All the website cases we have are the, there's nothing that indicates that the website operator knows anything other than the user's billing address. That's the South Carolina case. That's very different. That's not a suit in which they're saying the website told me there's a hotel in Missouri, I'd like to sue the website in Missouri. That's a person from South Carolina suing a website about a hotel in Missouri and saying I'd like to sue the website in South Carolina. In my example, that would be me saying I'd like to sue you in Massachusetts. But now I'm saying, no, I want to sue you about the sale in New Hampshire that you told me I could make. In the South Carolina case, the person found this hotel in Italy through the website and tried to sue them back in South Carolina. But it wasn't a case where they were saying, yep, but if they wanted to sue them in Italy, that might be different, right? Because the website was saying, here's something that you can make a deal in Italy. The Fourth Circuit case doesn't say that wouldn't be personal jurisdiction. I still come back to the point that this kind of amorphous direction to any of the forums throughout the country isn't significant and isn't sufficient for Arms List to purposely avail itself in New Hampshire. And I'm not aware of any other cases where a court has found that based on the sorting functions. But Plexer is a little bit. Well, Plexer is different in that there was much more revenue involved in that and there was a longer relationship there between Plexer and the state. And also in Plexer, it was found under Rule 4K2 and it was limited to those facts. And the court's decision later in Rosenthal reiterated that those facts were limited. What about the, I think it was the Ninth Circuit's case in Maverick's photo? Yes. Why the reasoning of that case and the facts seem like it could be on point here. Certainly the plaintiff's saying yes. So what do you say about that case? So Maverick's is different. And again, there were factors beyond merely having the website available. I know that there was advertisements directed into the forum state there that were specific to the forum state, which is not present here. And I think that there was revenue, significant revenue in that case that's not found here. At most, they allege in 2016 that there was less than $3,000 in sales, which was four-tenths of 1% of their sales. And that makes Maverick different than the case that we're dealing with here. If we thought the inclusion of the filtering function that enables the user to find that the sale is occurring in New Hampshire was the plus factor that mattered for purposeful availment, do you have a view about whether, for relatedness purposes, the claim to be related has to, to the minimum context, has to be that the purchaser in the sale that gives rise to the claim use that sorting function? And do you know of any case law that would help us figure that out? So if I understand your question correctly, for stepping out of the purposeful availment prong here, looking at the relatedness prong, would the search function have to be utilized to meet the relatedness prong? So I don't, I think we have a number of challenges to the relatedness prong. My brother at council said that it's obvious. We don't think that it is. But I think that the, I don't think that the search, I don't think that this would hang on the search function itself. I think you'd go through the traditional analysis of relatedness. Can you just walk through the relatedness? I'm sorry? Do you have, on relatedness itself, do you have points to make there or not? So if this case was made on purposeful availment, that's the only thing that gets forwarded. And the district court never addressed the other issues. I'm sorry? And the district court never addressed the other issues. Right. It never addressed that. I mean, I think that there are a number of factors, a number of challenges that we would have to relatedness, including showing how the gun, the purchase of the gun got from, you know, a sale in Warner, New Hampshire down to Boston. Would your advice just be that we should just remand and let the district court in the first instance address that? I'm sorry? Your view would be that we should let the district court in the first instance address that or not? My position, our position would be that the court uphold Judge Barbador's decision on purposeful availment. If it came to relatedness or the court found that purposeful availment existed, I think that this court would then have to remand the case down to Judge Barbador for relatedness because it wasn't addressed down below. Thank you. Thank you, Your Honor. Thank you, counsel. At this time, would counsel for the appellant please reintroduce himself on the record? He has a three-minute rebuttal. Again, Douglas Leder here for the appellant. Your Honor, I apologize again for not having the quick answer. There are two places in the complaint that are in the joint appendix at page 37, paragraph 196. With your permission, I'll just read. It's very brief. Upon information and belief, Johnson was also able to use the state filtering function to locate private sellers who were located in states that did not have their own laws requiring background checks. And then the next page, so that's joint appendix 38, paragraph 204. McNamara informed the ATF special agent investigating the armless gun's purchase history that he sold the armless gun on armless.com for $460 to Johnson, a New Hampshire woman who contacted him through armless.com and said she was interested in purchasing his gun. And I just note in addition to this. This is a little bit of a gap. I'm sorry? A little bit of a gap. A little bit, but I think sufficient. But we wanted. Could I just ask, if we thought the gap was significant enough that there was an issue about relatedness that would have to be addressed on remand, assuming that this feature was enough for purposeful availment, which it may not be, what should we then do about the jurisdictional discovery fight that's separately happening? It would seem somewhat wasteful to remand for a relatedness analysis. Presumably that generates another appeal at which the already now briefed issue about jurisdictional discovery would then have to be briefed all over again. On the other hand, I think the logic of the district court's assessment was the order of operations should be, deal with whether there's personal jurisdiction before we deal with jurisdictional discoveries. Do you have a view of how we should proceed? Yes, Your Honor. In answering that, I just want to give one point in case you're thinking, well, why didn't you talk to Johnson?  Judge Selye, can you hear us? Yes. We did want to talk to Johnson. We contacted her lawyer. She was convicted of criminal conduct. Her lawyer told us that she would just take the Fifth Amendment, so deposing her wouldn't do us any good. Yes, Your Honor. That's no good as an answer. We think that the court, this court, can determine on the basis of the current record it is sufficiently related for the case to go forward. If there's any doubt about that, then I think the appropriate thing would be jurisdictional discovery so that we can at least have a chance to probe with arm's list. Again, we won't, I assume the answer from Johnson will be the same, but at least we'll be able to see whether arm's list has relevant records. Just to address the error that the district court made, and I understand the error you, Contendant, made about public nuisance, which has to do with the timing point, correct? Yes. Of course, this issue itself would be not wrapped up in the timing point. That's correct. It's a historical fact that's frozen in that time. Right. What's your argument as to why there was error as to the other ground that the district court gave with respect to the local law? I'll be very quick. Unfortunately, the district judge seemed, the district court, I don't want to personalize this, seemed unaware that Federal Rule of Civil Procedure 7B says expressly that you don't have to make a written motion. A motion can be made orally in a hearing. That's right there in the rule. The judge then referred to local rule about not combining things. The local rules under the Rules Enabling Act cannot be inconsistent with the Federal Rules of Civil Procedure. And so that was just wrong. In addition, the judge said that we should have used the procedure under Federal Rule of Civil Procedure 56F. And by the way, he meant 56D. F was changed. That rule governs summary judgment. It has nothing to do with motions to dismiss, and they're obviously completely different. We were at a motion to dismiss stage. So besides the fact that the judge was wrong saying that we hadn't identified, as we say and we point out in our brief in considerable detail, we did tell him exactly what we wanted, and that was discussed actually at the hearing. But those two, he obviously had forgotten about Rule 7 in the Rules of Civil Procedure. Thank you. Thank you, Your Honors. Thank you, counsel. That concludes argument in this case.